UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

TIMOTHY MARKHAM,

                Plaintiff,                Case No. 1:12-cv-1063

v.                                                 Honorable Janet T. Neff

ROBERT MOTE et al.,

                Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Palmer, Macauley, Kipp, Lockhart, Russell, Stewart, Chaney, and Dutcher. The Court will serve the complaint against Defendant Mote.

**Discussion**

I. Factual allegations

Plaintiff Timothy Markham is incarcerated by the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI), where the events giving rise to his complaint occurred. He sues to following employees of RMI: Warden Carmen Palmer, Deputy Wardens Tim Kipp and Anthony Stewart, Assistant Deputy Warden (ADW) Matt Macauley, Resident Unit Manager (RUM) Robert Mote, Hearing Investigator "Unknown" Dutcher, Grievance Manager Richard Russell, Grievance Coordinator Chad Chaney, and Grievance Specialist Sean Lockhart.

In his *pro se* complaint, Plaintiff alleges that he received a Notice of Package Rejection from the mailroom on June 9, 2011, regarding a book that he had ordered, titled "Criminal Investigation, Evidence, Clues, and Forensic Science." (Compl., docket #1, Page ID#5.) The notice indicated that the book was rejected in accordance with MDOC Policy Directive 05.03.118(D), because the book was "a threat to the security, good order, or discipline of the facility." (Compl., Page ID#5.) Plaintiff requested an administrative hearing to contest the rejection of his book.

On July 12, 2011, RUM Mote met with Plaintiff to hold the hearing. Mote informed Plaintiff of the purpose of their meeting and asked Plaintiff "if he had anything to say and what he wanted to do with the book -- send it out or destroy it." (*Id.*) Plaintiff alleges that Mote had not reviewed the book, did not have it present at the hearing, and did not give a "specific or legitimate" reason for rejecting the book, so Plaintiff had nothing to say. (*Id.*) Plaintiff informed Mote that it was not proper to hold the hearing without the book and before reviewing it. After their meeting,

Plaintiff expected that a "proper" hearing would be held at another time, but Plaintiff never saw Mote again. (*Id.*)

On August 29, 2011, Plaintiff received a memorandum from the mailroom indicating that a hearing had been held regarding the book on July 28, 2011. (MDOC Memo., docket #1-2, Page ID#14.) The memo notified Plaintiff that he had ten days to mail the book out of the facility or to have it picked up; otherwise, the book would be destroyed. Attached to the memo was an administrative hearing report prepared by Defendant Mote. (*See* MDOC Admin. Hr'g Rep., docket #1-2, Page ID#15.) The report states that a hearing was held on July 28, 2011, at which Mote reviewed the book and determined that it violates MDOC policy. According to the hearing report, the book "was reviewed and determined to be a treat to the security [sic]. It is believed that the book could be used to facilitate and encourage criminal activity do soly [sic] on the content of the book." (*Id.*) Plaintiff contends that the report by Mote is false because there was no hearing on July 28, 2011.

Plaintiff then filed a grievance complaining that the hearing report was false, that he never received an adequate hearing, and that he never received notice of a specific reason for rejection of the book other than a general assertion that the book was a threat to the security of the facility. Plaintiff also contested the determination that the book violated the prison's policies, arguing that the book "did not contain any information seen almost daily on any of several tv programs or found in books in the law library." (Compl., docket #1, Page ID#6.)

Plaintiff did not receive a response to his grievance, so he filed an appeal to step II of the grievance process. On November 7, 2011, Plaintiff was summoned to Defendant Dutcher's office to pick up the response to his step II grievance appeal, which was an unusual request because,

according to Plaintiff, step II responses are always returned to prisoners via institutional mail. Plaintiff contends that Defendant Dutcher intended to discourage Plaintiff from exercising his right to pursue a prison grievance. In the step II response, Warden Palmer rejected Plaintiff's appeal. Attached to Palmer's step II response was a step I response signed by Defendants Macauley and Kipp.

On November 8, 2011, Plaintiff appealed his grievance to step III of the grievance process. Defendants Lockhart and Russell rejected the appeal at step III. On November 17, 2011, Plaintiff received a second step I response. It was identical to the first step I response by Defendants Macauley and Kipp, except that the second response was signed by Defendants Kipp and Stewart.

Finally, Plaintiff alleges that Defendant Chaney failed to direct Plaintiff's grievance to the "inspector or internal affairs division" of the MDOC. (Compl., docket #1, Page ID#8.)

Plaintiff contends that the foregoing conduct by Defendants have violated his rights under the First, Fifth, and Fourteenth Amendments, including his right to due process, his right against censorship of reading materials, and his right of access to the courts. As relief, Plaintiff seeks a declaratory judgment, an injunction, and damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Palmer, Macauley, Kipp, Lockhart, Russell, Stewart & Chaney

Plaintiff's only allegations against Defendants Palmer, Macauley, Kipp, Lockhart, Russell, and Stewart are that they learned of the actions of Defendant Mote through the prison grievance process and then upheld the findings in Mote's allegedly false administrative hearing

report. Similarly, Plaintiff's only allegation against Defendant Chaney is that he failed to forward Plaintiff's grievance to the investigative division of the MDOC.

To the extent Plaintiff sues Defendants solely because of their supervisory role over others individuals named in the complaint, or because they failed to act on information contained in a grievance, Plaintiff does not state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Palmer, Macauley, Kipp, Lockhart, Russell, Stewart, and Chaney engaged in any active unconstitutional behavior. The mere fact that they denied Plaintiff's grievances, or failed to forward a grievance to another official, does not give rise to a § 1983 claim. *See Shehee*, 199 F.3d at 300.

Plaintiff implies that the foregoing Defendants violated his right to due process by failing to properly investigate or respond to the issues that he raised in his grievances, but the Sixth

Circuit and other circuit courts have held that there is no constitutionally-protected due process right to an effective grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Furthermore, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the prison grievance procedure, Defendants' conduct in connection with that procedure did not implicate his right to due process.

Plaintiff also asserts that Defendants violated his right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to state a viable claim, however, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). That is, Plaintiff must show that Defendants have prevented him from pursuing a non-frivolous legal claim in pending or contemplated litigation. *See id.*; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) ("[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."). Plaintiff's complaint contains no facts from which to infer that Defendants have prevented him from pursuing a claim in court. Thus, his assertion that Defendants violated his right of access to the courts is wholly conclusory and fails to state a claim.

For the foregoing reasons, therefore, Plaintiff fails to state a claim against Defendants Palmer, Macauley, Kipp, Lockhart, Russell, Stewart, and Chaney, and they will be dismissed from the action.

### B. Defendant Dutcher

Plaintiff claims that Hearing Investigator Dutcher intended to discourage Plaintiff from filing grievances because Plaintiff was required to pick up a copy of a grievance response at Dutcher's office. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has not stated a viable retaliation claim because he alleges no adverse consequences, actual or threatened, as a result of being required to pick up a response to his grievance at Dutcher's office. Where, as here, "a challenged action has no consequences whatsoever, either immediate or long-term, it ineluctably follows that such an action is 'inconsequential.'" *Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir. 2002). If "a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' [then] the [retaliation] claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675

F.3d 580 (6th Cir. 2012) (quoting *Bell v. Johnson*, 308 F.3d 594, 603, 606 (6th Cir. 2002)). Plaintiff has alleged nothing more than a minor inconvenience, which is not sufficient to state a retaliation claim. As such, Plaintiff's claim against Defendant Dutcher must be dismissed.

### C. Defendant Mote

Upon review, the Court concludes that Plaintiff's allegations suffice to warrant service of the complaint on Defendant Mote.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Palmer, Macauley, Kipp, Lockhart, Russell, Stewart, Chaney, and Dutcher will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Mote.

An Order consistent with this Opinion will be entered.

Dated: March 4, 2013 /s/ Janet T. Neff
Janet T. Neff
United States District Judge