UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY MARKHAM,

       Plaintiff,                                        Hon. Janet T. Neff

v.                                                      Case No. 1:12-cv-1063

ROBERT MOTE, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Mote's Motion for Summary Judgment</u>. (Dkt. #28). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter terminated.


## BACKGROUND

Plaintiff Timothy Markham is incarcerated by the Michigan Department of Corrections (MDOC). Markham is presently housed at the Ionia Correctional Facility, but the events giving rise to this action occurred at the Michigan Reformatory (RMI). Plaintiff initiated this action against the following RMI employees: Warden Carmen Palmer, Deputy Wardens Tim Kipp and Anthony Stewart, Assistant Deputy Warden (ADW) Matt Macauley, Resident Unit Manager (RUM) Robert Mote, Hearing Investigator "Unknown" Dutcher, Grievance Manager Richard Russell, Grievance Coordinator Chad Chaney, and Grievance Specialist Sean Lockhart.

The following allegations are contained in Plaintiff's *pro se* complaint. On June 9, 2011, Plaintiff received a Notice of Package Rejection regarding a book that he ordered, titled "Criminal

Investigation, Evidence, Clues, and Forensic Science."[1] The notice indicated that the book was rejected in accordance with MDOC Policy Directive 05.03.118(D), because the book was "a threat to the security, good order, or discipline of the facility." Plaintiff requested an administrative hearing to contest the rejection of his book.

On July 12, 2011, RUM Mote met with Plaintiff to conduct a hearing. Mote informed Plaintiff of the purpose of their meeting and asked Plaintiff "if he had anything to say and what he wanted to do with the book." Mote had not reviewed the book, did not have it present at the hearing, and did not give a "specific or legitimate" reason for rejecting the book, so Plaintiff had nothing to say. Plaintiff informed Mote that it was not proper to hold the hearing without the book and before reviewing it. After their meeting, Plaintiff expected that a "proper" hearing would be held at another time, but such never occurred.

On August 29, 2011, Plaintiff received a memorandum indicating that a hearing had been held regarding the book. The memo notified Plaintiff that he had ten days to mail the book out of the facility or to have it picked up; otherwise, the book would be destroyed. Attached to the memo was an administrative hearing report prepared by Defendant Mote. The report stated that a hearing had been conducted on July 28, 2011, at which Mote reviewed the book and determined that it violated MDOC policy. According to the hearing report, the book "was reviewed and determined to be a t[h]reat to the security. It is believed that the book could be used to facilitate and encourage criminal activity d[ue] sol[el]y on the content of the book." Plaintiff contends that the report by Mote is false because no hearing was conducted on July 28, 2011.

---

[1] Plaintiff has included with his response to the present motion a copy of the book in question. (Dkt. #40). The book is described on the jacket as an examination "at how forensic scientists can follow a trail of DNA, fingerprints, ballistics records, and microscopic fibers directly to a criminal." *Id.*

Plaintiff filed a grievance alleging that the hearing report was false, that he never received an adequate hearing, and that he never received notice of a specific reason for rejection of the book. Plaintiff also contested the determination that the book violated prison policy. Plaintiff did not receive a response to his grievance, so he filed a Step II appeal. On November 7, 2011, Plaintiff was summoned to Defendant Dutcher's office. Dutcher summoned Plaintiff to provide him with the response to his step II grievance appeal, but to also discourage him from exercising his right to pursue a prison grievance. In the step II response, Warden Palmer rejected Plaintiff's appeal. Attached to the step II response was a step I response signed by Defendants Macauley and Kipp. Plaintiff appealed the matter to step III of the grievance process. Defendants Lockhart and Russell rejected the appeal at step III.

Plaintiff alleges that Defendants violated his rights to due process and access to the courts and, moreover, violated his right against censorship of reading materials. Plaintiff's claims have since been dismissed save his claims against Defendant Mote who now moves for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

# ANALYSIS

**I.        Right of Access to the Courts**

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). To state a claim for denial of access to the courts, a prisoner must allege that he suffered "an actual litigation related injury or legal prejudice because of the actions of the defendants." *Erdman v. Martin*, 52 Fed. Appx. 801, 803 (6th Cir., Dec. 12, 2002) (citing *Casey*, 518 U.S. at 349-51); *see also*, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (to state a claim for denial of access to the courts, Plaintiff must allege that he suffered an "actual injury," such as "the late filing of a court document or the dismissal of an otherwise meritorious claim").

In his complaint, Plaintiff has not alleged that he suffered any litigation related injury or legal prejudice as a result of Defendant Mote's alleged conduct. Instead, Plaintiff merely asserts the conclusion that Defendant violated his right of access to the courts. Plaintiff has also failed to submit any evidence, which if believed, would entitle him to relief on this claim. Accordingly, the undersigned recommends that Defendant Mote is entitled to summary judgment as to this claim.

**II.       Due Process**

Plaintiff alleges that Defendant Mote failed to conduct an appropriate hearing concerning his decision to reject the book in question. Plaintiff further alleges that Mote falsified the Hearing Report articulating the decision to reject the book. Plaintiff alleges that these actions violated his due process rights.

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must afford the individual with notice and a meaningful opportunity to be heard. *See Heike v. Guevara*, 519 Fed. Appx. 911, 924 (6th Cir., Mar. 18, 2013); *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007). The Due Process Clause is not implicated by any and every deprivation of liberty or property, but instead applies only where an individual has been deprived of a *constitutionally protected* liberty or property interest. *See Brentwood Academy*, 442 F.3d at 433. Even if the Court assumes that rejection of the book in question deprived Plaintiff of a constitutionally protected property interest, Defendant Mote is entitled to summary judgment because Plaintiff was afforded sufficient process in this matter.

In support of his motion for summary judgment, Defendant Mote has submitted an affidavit. (Dkt. #29, Exhibit C). Mote asserts that on June 9, 2011, a mailroom clerk completed a Notice of Package Rejection form indicating that the book in question would not be delivered because it constituted a security threat. (Dkt. #29, Exhibit C). This assertion is consistent with the Notice of Package Rejection form that Plaintiff attached to his complaint. (Dkt. #1). Mote asserts that he subsequently conducted a hearing regarding the matter and pursuant to such interviewed Plaintiff. (Dkt. #29, Exhibit C). Plaintiff concedes in an affidavit that Mote conducted a hearing on July 12, 2011, and that pursuant to such he spoke with Mote. (Dkt. #41, Exhibit 10).

In his affidavit, Plaintiff asserts that he explained to Mote that he needed the book "to research issues in [his] criminal case."[2] Despite being afforded the opportunity to be heard on the

---

[2] The Court notes that Plaintiff's criminal case concluded more than 18 years ago. *See* Timothy Allen Markham, available at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=210040 (last visited on November 21, 2013); *People v. Markham*, Case No. 137524, Opinion (Mich. Ct. App., Jan. 27, 1994); *People v. Markham*, Case No. 98883, Order (Mich., Jan. 4, 1995).

matter, Plaintiff asserts that he is nevertheless entitled to relief because Defendant Mote "did not have the book present" during the hearing and "did not articulate any reason for rejecting [the book] beyond what was in the mailroom's Notice of Package Mail Rejection." (Dkt. #41, Exhibit 10). Plaintiff also argues that he is entitled to relief because Defendant Mote failed to follow MDOC guidelines regarding how such matters are to be resolved.

First, whether Defendant Mote brought the book to the hearing is irrelevant. Defendant Mote asserts in his affidavit that he reviewed the book in question prior to the hearing. (Dkt. #29, Exhibit C). Plaintiff does not dispute this in his affidavit. (Dkt. #41, Exhibit 10). The purpose of the hearing was not to probe Defendant's understanding of the book, but to instead allow Plaintiff an meaningful opportunity to offer his rationale why the book should not be rejected. The Court recognizes that such arguably required Mote to possess some basic understanding or knowledge of the book. Given that Defendant Mote reviewed the book prior to the hearing, the Court cannot conclude that Plaintiff's hearing was not meaningful.

As for Plaintiff's dissatisfaction with the rationale articulated by Defendant Mote during the hearing, the Court is likewise not persuaded as Defendant Mote subsequently issued a written decision clearly articulating the basis for his decision to reject the book in question. (Dkt. #1, Exhibit 2). Specifically, Mote concluded that the book constituted a security threat because it "could be used to facilitate and encourage criminal activity." (Dkt. #1, Exhibit 2). Finally, whether Defendant Mote followed MDOC guidelines (or any other state rule or requirement) in this matter is not particularly relevant to the determination whether Plaintiff's federal due process rights were respected. *See, e.g., Wedgewood Ltd. Partnership I v. Township of Liberty, Ohio*, 610 F.3d 340, 354 (6th Cir. 2010) ("it is well-established that violations of state law do not automatically translate into a deprivation of

procedural due process under the United States Constitution"). In sum, due process afforded Plaintiff the right to notice and a meaningful opportunity to be heard. The evidence reveals that Plaintiff was afforded both.

The Court also rejects Plaintiff's assertion that Defendant Mote falsified his Administrative Hearing Report. As the evidence discussed above reveals, the hearing in this matter was conducted on July 12, 2011. Defendant Mote's Administrative Hearing Report is dated July 28, 2011, and also identifies the "Date of Hearing" as July 28, 2011. (Dkt. #1, Exhibit 2). Plaintiff asserts that this discrepancy in dates demonstrates that Mote falsified his hearing report. As Defendant Mote asserts in his affidavit, he completed his report on July 28, 2011. (Dkt. #29, Exhibit C). That Mote completed his report several weeks after conducting the hearing does not constitute a violation of Plaintiff's due process rights. Likewise, that Defendant Mote erroneously identified the date of the hearing in his report does not violate Plaintiff's due process rights. Accordingly, the undersigned recommends that Defendant Mote is entitled to summary judgment as to this claim.

**III.        First Amendment**

Finally, Plaintiff alleges that the decision to reject the book in question violates his First Amendment right not to have his reading material censored. It is not disputed that prisoners possess a First Amendment right to receive mail and possess books. *See, e.g., Coleman v. Bowerman*, 474 Fed. Appx. 435, 438 (6th Cir., Apr. 4, 2012) (prisoners have the right to receive mail); *Thomas v. Ricks*, 2012 WL 681640 at *7 (S.D. Ga., Jan. 31, 2012) (prisoners have the right to possess books). Moreover, it is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v.*

*Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

> 2. whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.* This analytical framework is applicable to claims, such as that presently before the Court, concerning rejection of mail on security grounds. *See, e.g., Hayes v. State of Tennessee*, 424 Fed. Appx. 546, 550-51 (6th Cir., June 1, 2011); *Traini v. Michigan Department of Corrections*, 2011 WL 4559978 at *9-11 (W.D. Mich., Sept. 30, 2011).

Pursuant to Michigan Department of Corrections policy, prisoners are not permitted to receive mail "if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner." Michigan Department of Corrections Policy Directive 05.03.118 ¶ D (effective September 14, 2009). Defendant

Mote asserts in his affidavit that he rejected the book in question pursuant to this Policy Directive. (Dkt. #29, Exhibit C). There can be no doubt that prison officials have a legitimate interest in preventing prisoners from possessing such material. Moreover, Defendant Mote relied on this Policy Directive in his decision to reject Plaintiff's book. The Court concludes, therefore, that there exists a valid, rational connection between this legitimate security interest and the action taken in this case.

As for the remaining *Turner* factors, such do not weigh in Plaintiff's favor. The Policy Directive pursuant to which Defendant acted does not prevent Plaintiff from receiving mail or books, but instead only restricts Plaintiff's ability to possess material which constitutes a security threat. In this respect, Defendant Mote asserts that he rejected the book in question because:

> The book provides information about how to determine if a document is forged; where and how [finger]prints are left by a criminal and how to avoid leaving this evidence; removal of identifiable characteristics of a victim; use of accelerants and how a "natural" fire differs from a fire started from accelerant; and how crime scenes may be contaminated. This information could assist a prisoner in committing crimes, both inside and outside of the facility in a manner to avoid detection.

(Dkt. #29, Exhibit C).

A review of the book reveals that Defendant Mote's conclusion in this regard is neither inaccurate nor unreasonable. Moreover, Plaintiff asserts in his affidavit that the prison law library contains similar books addressing the topic of forensic evidence. (Dkt. #41, Exhibit 10). Thus, there exist for Plaintiff alternative means of pursuing his interest in forensic evidence which do not impede legitimate penological objectives. In sum, the policy pursuant to which Defendant Mote acted is an appropriate measure by which to pursue legitimate penological objectives. Moreover, Plaintiff has not demonstrated that this policy was misapplied to the book in question. While the Court understands Plaintiff's frustration in this matter, the resources of the MDOC are limited and the Court must accord

"wide-ranging deference" to the solutions implemented by prison officials to effect legitimate penological goals. As both the policy and its application in this matter are reasonable means of effecting legitimate penological objectives, the undersigned recommends that Defendant Mote's motion for summary judgment be granted as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Mote's Motion for Summary Judgment</u>, (dkt. #28), be **granted** and this matter terminated. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                    Respectfully submitted,

Date: November 27, 2013                      /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge