UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MARKHAM,

    Plaintiff,

v

ROBERT MOTE, et al.,

    Defendants.
_____/

Case No. 1:12-cv-1063

HON. JANET T. NEFF

## OPINION AND ORDER

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff alleged that Defendants violated (1) his First Amendment rights by censoring his reading material, (2) his right of access to the courts, and (3) his due-process rights. Plaintiff's claims have since been dismissed save his claims against Defendant Mote, who filed a motion for summary judgment. Defendant Mote argued that Plaintiff's constitutional rights were not violated because Plaintiff received due process and the book rejection was reasonably related to the legitimate penological objective of prison security (Def.'s Mem., Dkt 29 at 6). The matter was referred to the Magistrate Judge, who issued a Report and Recommendation (R&R), recommending that this Court grant Defendant's motion. The matter is presently before the Court on Plaintiff's objections to the Report and Recommendation. In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b)(3), the Court has performed de novo consideration of those portions of the Report and Recommendation to which objections have been made. The Court denies the objections and issues this Opinion and Order.

I.      **First Amendment**

Plaintiff argues that the Magistrate Judge was too deferential to the decisions of prison officials, that Plaintiff's claim was treated as a facial challenge rather than an "as applied" challenge, and that rejecting the book was an exaggerated response to Defendant Mote's speculative security concerns (Pl. Obj., Dkt 52 at 7-8). Plaintiff's argument fails to demonstrate any factual or legal error in the Magistrate Judge's analysis or conclusion.

First, Plaintiff misunderstands the nature of the deference given to decisions of prison officials. A deferential standard of review does not mean that courts ignore the constitutional rights of prison inmates. Rather, deference simply means that if a prison official's action does not violate constitutional standards, as determined under the appropriate standard of review, then the Court will not engage in a discussion of whether the Court would have made the same decision as the prison official. In other words, the Court will not substitute its judgment for that of the prison official when the official is acting within his or her sphere of responsibility. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) ("Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974))); *see also Meachum v. Fano*, 427 U.S. 215, 228-29 (1976) (discussing federalism reasons for the federal judiciary's limited oversight of state prisons); *Wolfish*, 441 U.S. at 547-48 (discussing separation-of-powers reasons for the Judicial Branch's limited oversight of prison administration, which is "peculiarly the province of the Legislative and Executive Branches").

Second, contrary to Plaintiff's argument, the Magistrate Judge evaluated Plaintiff's First Amendment claim under the correct standard of review, to wit: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" (R&R, Dkt 45 at 10, quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)). The Magistrate Judge correctly determined that both the MDOC policy and its application in Plaintiff's situation reasonably served the legitimate penological interests of prison security and crime prevention (R&R, Dkt 45 at 11-12). Specifically, the Magistrate Judge found that legitimate penological interests were reasonably served by (1) the MDOC policy that prevented inmates from receiving mail that may facilitate criminal activity, and (2) preventing Plaintiff from receiving the particular book in question (*id.* at 11-12). Additionally, Plaintiff has alternative means for exercising his First Amendment rights because he can still receive mail and can still investigate other sources for conducting his legal research (*id.* at 12). The *Turner* standard of review does not require the prison policy to be the "least restrictive" means of accomplishing its objective (R&R, Dkt 45 at 11, quoting *Flagner v. Wilkinson*, 241 F.3d 475, 484 (6th Cir. 2001)). The Magistrate Judge clearly reviewed the policy *as applied to Plaintiff* and correctly concluded that "both the policy and its application in this matter are reasonable means of effecting legitimate penological objectives" (R&R, Dkt 45 at 13).

Third, Plaintiff's argument that the book's rejection was an exaggerated response is similarly misguided. For a plaintiff to show that a prison official's response was an exaggerated one, he must "point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests," after which "a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482

3

U.S. at 91). Simply showing that the prison could have achieved the same result with a different action is not dispositive: whether there are alternative means for the prison to accomplish its objectives is only one of four factors used to evaluate inmates' claims of constitutional violations. Here, Defendant Mote determined that the book "could assist a prisoner in committing crimes, both inside and outside of the facility in a manner to avoid detection" because it discussed how to avoid leaving forensic evidence (R&R, Dkt 45 at 12). Plaintiff cannot receive the book without the prison forfeiting its legitimate penological interest entirely.

Plaintiff also argues that Defendant Mote's concerns were speculative (Pl. Obj., Dkt 52 at 7-8, citing *Whitney v. Brown*, 882 F.2d 1068 (6th Cir. 1989)). Even if Plaintiff were correct that the two books in the prison law library were similar in content to the rejected book, *Whitney* is factually distinguishable. In *Whitney*, the prison policy left the inmates with no reasonable alternatives for exercising their religion because the policy effectively made a central element of the inmates' religious practice impossible. *Id.* at 1076-77. In contrast to the inmates in *Whitney*, Plaintiff has other alternatives for expressing his First Amendment rights, and giving this book to Plaintiff would undermine the prison's legitimate penological interests.

In sum, Plaintiff's arguments lack merit. The Magistrate Judge properly concluded that both the MDOC policy and Defendant Mote's decisions were constitutional because the book rejection was reasonably related to the legitimate penological objectives of prison security and crime prevention.

## II. Right of Access to the Courts

Plaintiff next argues, that the book's rejection was a litigation-related injury violating his right of access to the courts (Pl. Obj., Dkt 52 at 2, citing *Petrick v. Maynard*, 11 F.3d 991, 995 (10th

Cir. 1993)). Plaintiff misunderstands the definition of a litigation-related injury. Plaintiff claims that the book rejection thwarted his ability to research legal issues related to appealing his criminal conviction. But inmates do not possess an "abstract, freestanding right to a law library or legal assistance," and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Just as Plaintiff cannot establish actual injury by showing that the prison law library does not have the book he desires, he also cannot base an actual-injury claim on a prison official's constitutional action that prevented Plaintiff from obtaining the book through the mail. The Magistrate Judge properly indicated that "to state a claim for denial of access to the courts, Plaintiff must allege that he suffered an 'actual injury,' such as 'the late filing of a court document or the dismissal of an otherwise meritorious claim'" (R&R, Dkt 45 at 6, quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). Here, Plaintiff is not prevented from filing court documents, and he has not indicated that a meritorious attack on his conviction has been dismissed.

Furthermore, Plaintiff's reliance on *Petrick* is misplaced. In *Petrick*, the court found that the prison had failed to show that prohibiting the plaintiff's participation in the intra-library loan program, and refusing to obtain the plaintiff's specifically requested materials on North Dakota and Minnesota law, were reasonably related to a legitimate penological interest. *Petrick*, 11 F.3d at 995. Conversely, the rejection of Plaintiff's book that may facilitate criminal activity was reasonably related to a legitimate penological interest as discussed *supra*.

Plaintiff's argument is without merit and fails to demonstrate any factual or legal error in the Magistrate Judge's analysis or conclusion.

**III.   Due Process**

Finally, Plaintiff argues that he was not afforded legally sufficient process because he did not receive the notice and hearing to which he was entitled (Pl. Obj., Dkt 52 at 3-5). Plaintiff again misinterprets the legal standards. First, Plaintiff was given sufficient notice because he received a Notice of Package Rejection form stating that his book was a security threat and would not be delivered (R&R, Dkt 45 at 7, citing Dkt 1). Plaintiff attached the rejection notice to his complaint (*id.*). Second, Plaintiff was given a legally sufficient hearing when he met with Defendant Mote on July 12, 2011 (R&R, Dkt 45 at 7, citing Dkt 41, Ex. 10). The right to due process does not require a hearing to resemble a trial. Rather, Plaintiff is entitled to "a meaningful opportunity to be heard" (R&R, Dkt 45 at 7, citing *Heike v. Guevara*, 519 F. App'x 911, 924 (6th Cir. 2013)). Plaintiff's right to be heard was satisfied because, as Plaintiff concedes, he met with Defendant Mote and was given the opportunity to fully explain why he thought the book should not be rejected (*id.*). Plaintiff's argument is therefore without merit. The Magistrate Judge correctly concluded that Plaintiff received due process—notice and a meaningful opportunity to be heard.

Accordingly, this Court adopts the Magistrate Judge's Report and Recommendation as the Opinion of this Court. A Judgment will be entered consistent with this Opinion and Order. *See* FED. R. CIV. P. 58. Because this action was filed *in forma pauperis*, this Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this decision would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997), overruled on other grounds by *Jones v. Bock*, 549 U.S. 199, 206, 211-12 (2007).

Therefore:

**IT IS HEREBY ORDERED** that the Objections (Dkt 52) are DENIED and the Report and Recommendation (Dkt 45) is APPROVED and ADOPTED as the Opinion of the Court.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment (Dkt 28) is GRANTED.

**IT IS FURTHER ORDERED** that the Court certifies pursuant to 28 U.S.C. § 1915(a) that an appeal of the decision would not be taken in good faith.

Dated: September 18, 2014         /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge